Filed 7/26/21  In re A.H. CA3

NOT TO BE PUBLISHED

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(El Dorado)

----

| | |
|---|---|
| In re A.H. et al., Persons Coming Under the Juvenile Court Law. | C093643 |
| EL DORADO COUNTY HEALTH AND HUMAN SERVICES AGENCY,<br><br>Plaintiff and Respondent,<br><br>v.<br><br>A.H. et al.,<br><br>Defendants and Appellants. | (Super. Ct. Nos. PDP20190047, PDP20190048) |

A.P. (mother) and A.H. (father) appeal from the juvenile court's orders terminating parental rights and freeing minors Ad.H. and Al.H. for adoption.  (Welf. & Inst. Code, §§ 366.26, 395.)[1]  They contend the juvenile court erred in failing to find the beneficial parental relationship exception to adoption applied.  We affirm.

---

[1]     Undesignated statutory references are to the Welfare and Institutions Code.

1

BACKGROUND

The El Dorado County Health and Human Services Agency (Agency) filed a section 300 petition on behalf of minors Al.H. (then age three) and Ad.H. (then age five) in August 2019, based on parents' ongoing substance abuse and neglect, and took the minors into protective custody. An amended petition was filed on behalf of both minors adding allegations of domestic violence. The juvenile court sustained the petitions, adjudged the minors dependents of the court, removed the minors from parental custody, and ordered reunification services for both parents. Parents were provided twice-weekly supervised visitation with the minors.

At the time of the six-month review hearing, mother was reported to be having "meaningful visits" with the minors two times a week for a total of four hours. She had been arriving late on many occasions for the first three months but had since been arriving on time. The minors were reported to be "always happy" to visits with her and initially had difficulty leaving her after visits. Mother used the family visitation time to have fun and play, but also to parent the minors, direct them on safe boundaries, and discipline them when necessary. Mother was reportedly affectionate, patient and encouraging, and brought appropriate activities to the visits. The juvenile court found parents' progress in services had been minimal but increased mother's visitation to three times per week for a total of six hours.

In the Agency's August 2020, 12-month review report, the social worker noted: "Throughout this case the mother has been minimally engaged and very inconsistent in participating in her services, all the while, expressing to the minors that she is doing well and they will be returning home soon. Although the undersigned can appreciate the mother's positive outlook, telling the minors that they are returning to her care soon while she knows she has continued to use and not actively engage in her drug treatment program is causing significant emotional harm to the minors." Mother had been visiting twice a week and father, who was in custody in the county jail, had been engaging in

2

phone call visits with the minors because he did not want the minors to see him in custody. The minors had "greatly bonded" with their caregivers but not in a concurrent placement. The contested hearing took place on September 29, 2020. The juvenile court terminated reunification services and set a section 366.26 hearing for January 8, 2021.

The Agency filed its section 366.26 report recommending termination of parental rights on December 22, 2020. The minors had adjusted well to placement but remained in the nonconcurrent home. The Agency considered them adoptable, as they are healthy, developmentally on target, and do not present emotional or behavioral issues, and was prepared to engage in the process of finding them a permanent concurrent home.

The following week, mother filed a section 388 petition for modification, seeking return of the minors or, alternatively, reinstatement of reunification services. The petition alleged, as changed circumstances, that mother had been sober for four months and 11 days, had graduated from a residential treatment program, completed anger management and parenting classes, and was participating in other services and on a waitlist for outpatient treatment. She had been visiting regularly and had a strong bond with the minors, and they could live with mother in her current housing, along with their new baby sibling, who they "adore" and "love to help Mother with." The petition alleged the requested modification was in the minors' best interests because the minors have a new baby sibling that is placed with mother and their return to mother would reunify them with family.

Parents requested a contested section 366.26 hearing. The court set a combined section 388/366.26 hearing, which took place on February 16, 2021. The Agency began by indicating it was submitting on the section 366.26 report but opposing mother's section 388 petition for modification. Mother testified on her own behalf about her progress in services, her living situation, and her sobriety. She also testified about her current visitation with the minors. The Agency again argued in opposition to mother's petition for modification. Mother's counsel argued mother had shown a change of

3

circumstances and that it was safe to return the minors to mother's care. Minors' counsel concurred with the Agency and father objected to termination of parental rights and supported mother's petition.

The juvenile court found no substantial or permanent change of circumstances and denied mother's petition for modification. The juvenile court then asked if the matter submitted on the section 366.26 part of the hearing. All parties affirmed that the matter was submitted. The juvenile court then found that none of the exceptions preventing termination of parental rights applied, found the minors likely to be adopted, and terminated parental rights.

Additional facts are set forth in our discussion.

DISCUSSION

Mother contends the juvenile court erred in failing to find the beneficial parental relationship exception to adoption applied based on her relationship with the minors. Father joins in mother's argument. We conclude that parents failed to raise the beneficial parental relationship exception in the juvenile court and have, therefore, forfeited this argument on appeal. On the merits, we conclude that parents failed to meet their burden to show that the exception should apply in this case.

At the selection and implementation hearing held pursuant to section 366.26, a juvenile court must choose one of the several " 'possible alternative permanent plans for a minor child. . . . *The permanent plan preferred by the Legislature is adoption.* [Citation.]' [Citation.] If the court finds the child is adoptable, it *must* terminate parental rights absent circumstances under which it would be detrimental to the child. [Citation.]" (*In re Ronell A.* (1996) 44 Cal.App.4th 1352, 1368.) There are limited circumstances permitting the court to find a "compelling reason for determining that termination [of parental rights] would be detrimental to the child." (§ 366.26, subd. (c)(1)(B).) Such circumstances include when the parents have maintained regular visitation and contact with the child, the child would benefit from continuing the relationship, and termination

4

of parental rights would be detrimental to the child. (§ 366.26, subd. (c)(1)(B)(1) [beneficial parental relationship exception]; *In re Caden C.* (2021) 11 Cal.5th 614, 639-640 (*Caden C.*).)

To prove that the beneficial parental relationship exception applies, the parent must show there is a significant, positive emotional attachment between the parent and child. (*In re Beatrice M.* (1994) 29 Cal.App.4th 1411, 1418-1419.) The parent must also prove that the parental relationship " 'promotes the well-being of the child to such a degree as to outweigh the well-being the child would gain in a permanent home with new, adoptive parents.' " (*In re S.B.* (2008) 164 Cal.App.4th 289, 297, quoting *In re Autumn H.* (1994) 27 Cal.App.4th 567, 575 (*Autumn H.*).) "In other words, the court balances the strength and quality of the natural parent[-]child relationship in a tenuous placement against the security and the sense of belonging a new family would confer. If severing the natural parent[-]child relationship would deprive the child of a substantial, positive emotional attachment such that the child would be greatly harmed, the preference for adoption is overcome and the natural parent's rights are not terminated." (*Autumn H.,* at p. 575.) On the other hand, when the benefits of a stable, adoptive, permanent home outweigh the harm the child would experience from the loss of a continued parent/child relationship, the court should order adoption. (*Caden C., supra,* 11 Cal.5th at pp. 633-634; *Autumn H.,* at p. 575.)

The beneficial parental relationship exception to adoption is an *exception* to the general rule that the court must choose adoption where possible, and it " 'must be considered in view of the legislative preference for adoption when reunification efforts have failed.' " (*In re Celine R.* (2003) 31 Cal.4th 45, 53.) It "must be examined on a case-by-case basis, taking into account the many variables which affect a parent/child bond. The age of the child, the portion of the child's life spent in the parent's custody, the 'positive' or 'negative' effect of interaction between parent and child, and the child's particular needs are some of the variables which logically affect a parent/child bond."

5

(*Autumn H., supra*, 27 Cal.App.4th at pp. 575-576.)  The party claiming the exception has the burden of establishing the existence of any circumstances that constitute an exception to termination of parental rights.  (*In re C.F.* (2011) 193 Cal.App.4th 549, 553 (*C.F.*).)  The factual predicate of the exception must be supported by substantial evidence, but the juvenile court exercises its discretion in weighing that evidence and determining detriment.  (*Caden C., supra,* 11 Cal.5th at pp. 639-640; *In re K.P.* (2012) 203 Cal.App.4th 614, 622.)  We do not substitute our judgment for that of the juvenile court as to what is in the child's best interests.  (*Caden C.,* at p. 641.)

The juvenile court, however, has no sua sponte duty to determine whether an exception to adoption applies.  (E.g., *In re Melvin A.* (2000) 82 Cal.App.4th 1243, 1252.)  Rather, it is the parent who has the burden of proving that an exception exists.  (*Ibid.*; *C.F., supra*, 193 Cal.App.4th at p. 553.)  Here, mother requested a hearing on both the petition for modification and the section 366.26 matter and agreed that the juvenile court would take evidence on her petition for modification first and, if that petition were to be denied, the court could consider that evidence when making its determination of the section 366.26 part of the hearing.  There was no mention by either parent of the applicability of the beneficial parental relationship exception.  Indeed, after the juvenile court denied mother's petition for modification, the juvenile court expressly asked if the matter was submitted on the section 366.26 part of the hearing and all parties affirmed that the matter was submitted.  The fact that mother's counsel mentioned, *in connection with her argument on the petition for modification* seeking return of the minors to mother's care, that mother has "a bond" with the minors and that counsel believed it would be detrimental to terminate parental rights since the minors visit mother and their sibling three times a week,[2] cannot be said to constitute an effort to place the beneficial

---

[2] This argument was made by counsel specifically in connection with the argument on mother's petition for modification and was immediately followed by counsel's

6

parental relationship exception or the sibling exception to adoption at issue. Father simply entered a general objection to the termination of his parental rights. Thus, parents have forfeited this argument by failing to assert it in the juvenile court. (*In re Christopher B.* (1996) 43 Cal.App.4th 551, 558; *In re Dakota S.* (2000) 85 Cal.App.4th 494, 501-502; *In re S.B.* (2004) 32 Cal.4th 1287, 1293, fn. 2.)

In any event, parents did not meet their burden.[3] Mother maintained regular visitation and contact with the minors but she failed to establish that the minors had such a significant, positive emotional attachment to her that they would benefit from continuing that relationship or be harmed to any significant extent should the attachment be severed, especially when balanced against the benefit of an adoptive home. (See *Autumn H., supra*, 27 Cal.App.4th at p. 575.)

By the time of the section 366.26 hearing, the minors, who had been removed at the ages of three and five years old, had been out of mother's care for over 18 months. Although it had been reported a year earlier that the minors were always happy to see mother when she visited and "initially had difficulty leaving her after visits," there were no such subsequent reports. In August 2020, mother was reported to be making false representations and promises to the minors, causing them significant emotional harm. The social worker's section 366.26 report described visits simply as "appropriate," with mother often prepared with snacks and being attentive during the visits. Mother testified that visits consisted of the minors playing with and helping to care for their younger sibling, coloring, and general playing. There was no other evidence regarding the nature

request, "and so I am asking the Court to return the [. . . minors] to my client's care with family maintenance services put in place."

[3]    In discussing this failure of proof, we discuss the evidence only as it relates to mother's relationship with the minors. Father does not contend that he consistently visited the minors or has a significant relationship with them, nor was there such evidence presented in the juvenile court. Father simply joins in mother's argument on appeal that *she* has a beneficial parental relationship with the minors.

or quality of the visits at the time of the section 366.26 hearing.  The *only* evidence suggesting *any* significant bond was mother's testimony that *her* bond with the minors was "unbreakable" and "indescribable" and mother's opinion that the minors love and need her as much as she needs them.  There was no other evidence that it would be detrimental to either minor to be separated from mother.  And there was no evidence that the minors were showing any difficulty separating from mother at the end of visits, asking about mother between visits, or asking to visit more frequently.

It is not enough for a parent to show frequent and loving contact during pleasant visits, as mother did here.  (*C.F., supra*, 193 Cal.App.4th at p. 555.)  Neither a loving relationship (*In re Jeremy S.* (2001) 89 Cal.App.4th 514, 523) nor the derivation of some benefit from continued parental contact (*In re Angel B.* (2002) 97 Cal.App.4th 454, 466) is enough to establish the beneficial parental relationship exception to adoption.  The specific elements of this statutory exception require a close examination of "the importance of the child's relationship with the parent or the detriment of losing that relationship." (*Caden C., supra*, 11 Cal.5th at pp. 625-626.)  Evidence of this nature was not presented in this case.  The juvenile court did not err in finding no exception to adoption applies.

## DISPOSITION

The orders of the juvenile court (terminating parental rights) are affirmed.

/s/

BLEASE, Acting P. J.

We concur:

/s/

HULL, J.

/s/

KRAUSE, J.